IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK JONES, | ) | Case No. 1:17-cv-1497 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| v. | ) | |
| | ) | |
| COMMISSIONER OF | ) | MEMORANDUM OF OPINION |
| SOCIAL SECURITY, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

## I.    Introduction

Plaintiff, Mark Jones, seeks judicial review of the final decision of the Commissioner of

Social Security denying his application for Disability Insurance benefits ("DIB") and

Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security

Act ("Act").  The parties consented to my jurisdiction.  ECF Doc. 16.

Because the ALJ did not correctly apply the applicable legal standards and failed to build

an accurate and logical bridge between her decision and the evidence, the final decision of the

Commissioner must be VACATED and REMANDED for further proceedings.

## II.    Procedural History

Jones applied for DIB and SSI on December 23, 2014, alleging a disability onset date of

July 4, 2013.[1]  (Tr. 197-209)  After his applications were denied initially on February 3, 2015

(Tr. 90-111) and after reconsideration on April 9, 2015 (Tr. 114-135), Jones requested an

---

[1] At the administrative hearing, Jones amended his alleged onset date to December 23, 2014.  (Tr. 40)

administrative hearing.  (Tr.160)  Administrative Law Judge ("ALJ") Penny Loucas heard the case on April 13, 2016 (Tr. 38-76) and denied Jones' claims in a June 1, 2016 decision.  (Tr. 16-33)  On May 26, 2017, the Appeals Council denied further review, rendering the ALJ's conclusion the final decision of the Commissioner.  (Tr. 1-4)  Jones filed this action on July 17, 2017 challenging the Commissioner's final decision.  ECF Doc. 1.

## III.    Evidence

### A.    Personal, Educational and Vocational Evidence

Jones was born in 1952 and was fifty-three years old at the time of the administrative hearing.  (Tr. 197)  He has a high school education (Tr. 197) and previous work experience as a chef and sous chef.  (Tr. 52-53)

### B.    Relevant Medical Evidence

In July 2012, Jones burned his left hand at work with cooking oil.  (Tr. 298)  Examination showed a partial thickness burn at the base of the fourth and fifth fingers of the left hand.  (Tr. 298)  His burn was healed by August 7, 2012 when he returned for a follow-up appointment. (Tr. 297)

On March 11, 2015, Jones presented to Care Alliance complaining of back pain, burning and numbness radiating down his left leg.  Dr. James Brown examined Jones.  Jones reported fatigue, joint pain, hand pain, chronic back pain, numbness and tingling in the feet, crying spells, depressed mood and insomnia.  (Tr. 416)  Dr. Brown noted limping gait, weakness of dorsiflexion in the left great toe, spinal tenderness in the lumbar region and positive straight leg raising on the left at 15 degrees.  (Tr. 417)  An x-ray of the lumbar spine showed degenerative changes with disc space narrowing and marginal osteophytic changes.  (Tr. 418)  Dr. Brown diagnosed elevated blood pressure, chronic low back pain, chronic depression, and Hepatitis C. Dr. Brown prescribed medications and referred Jones to physical therapy.  (Tr. 339, 418)

On April 13, 2015, Jones returned to Dr. Brown. Jones had not started physical therapy. (Tr. 414) Dr. Brown did not document any findings regarding Jones's back. (Tr. 414) Dr. Brown referred Jones to gastroenterology for Hepatitis C and to cardiology after an electrocardiogram showed tachycardia. (Tr. 414-415)

Jones started physical therapy on April 21, 2015. He reported limitations with dressing, grooming, heavy exertion, squatting, and lifting more than five pounds. He said that he injured his back when he fell eight months earlier. (Tr. 339) Examination showed reduced range of motion in the lumbar spine and 4/5 strength in the lower extremities. (Tr. 340-341) The plan formed at physical therapy defined Jones's impairment as a "backache" and noted that the evaluation was limited due to Jones's fear of movement to avoid pain. (Tr. 342) Goals were set to decrease Jones's pain so that he could participate in his activities of daily living and reduce the pain so that he could stand and walk for 60 minutes each; could sleep through the night without pain; and could sit at least 2 hours without pain. (Tr. 342)

At his second physical therapy visit on April 24, 2015, Jones's movements were slow and guarded. (Tr. 345-350) The therapist noted, "[p]atient exhibiting pain with every movement." (Tr. 346) On May 1, 2015, Jones reported continued back pain. (Tr. 348) Jones completed three of eight visits. (Tr. 351-353)

Dr. Brown also referred Jones for a behavioral health assessment on April 24, 2015. (Tr. 407) Jones reported symptoms of depression since losing his job in 2013. He had attempted suicide in 1997. (Tr. 407) Jones also reported depression, anger, anxiety, difficulty concentrating, self-destructive behavior, mood swings and thoughts of suicide. (Tr. 408) Examination showed some anxiousness/restlessness, depressed/blunted affect and depressed mood. (Tr. 410) Social Worker Cathy Alexander diagnosed major depressive disorder, severe, without psychotic features; hypertension; chronic back pain. He was assigned a 40 Global

Assessment of Functioning ("GAF") score.  (Tr. 411)  In a follow up visit on May 27, 2015, Ms. Alexander noted that Jones was spending most of his time watching TV at home.  (Tr. 406)

On June 15, 2015, Jones followed-up with Dr. Brown.  (Tr. 403-405)  Jones reported that he went to physical therapy four times but stopped because it made his pain worse.  He was having pain and numbness traveling down his left leg.  Examination showed tenderness in the lumbar spine, positive straight leg raise test on the left at 30 degrees, normal gait, normal and symmetric reflexes, and grossly normal sensation.  (Tr. 403)  Dr. Brown diagnosed major depressive disorder, recurrent, severe; benign essential hypertension; insomnia; and chronic pain. He added methylprednisolone for back pain and referred Jones to physical therapy again.  (Tr. 404)

Jones returned to see Ms. Alexander on July 2, 2015.  His mood was depressed and his affect was flat; he was having suicidal ideation.  (Tr. 401)  At his following visit on July 9, 2015, Jones was still experiencing anhedonia, anxiety, decreased appetite, depressed mood, difficulty concentrating, excessive alcohol consumption, fatigue and feelings of worthlessness/guilt.  (Tr. 399)  Ms. Alexander referred Jones to the Crisis Stabilization Unit to be admitted the same day. (Tr. 400)  At Frontline Services an initial crisis plan was formed to stabilize Jones's medications, help him sleep for eight straight hours, to teach him coping skills and to provide support/encouragement.  (Tr. 429)  On July 19, 2015, Jones was discharged from Frontline after 10 days with the diagnosis of major depressive disorder with psychosis.  He was referred for further mental health treatment.  (Tr. 446-447)

On July 28, 2015, Jones met with Dr. Brown reporting low back pain.  (Tr. 396-400)  Dr. Brown told Jones he needed to complete physical therapy before he could be referred to pain management.  Dr. Brown did not note any examination findings for Jones's back.  (Tr. Tr. 397)

On August 19, 2015, Jones returned to physical therapy. Jones reported no change in his condition since his last visit. (Tr. 354) The therapist noted improved gait quality and ability to perform transfers. (Tr. 355) Jones's diagnosis was left-sided low back pain without sciatica. (Tr. 356) At his next visit on August 24, 2015, Jones reported that he fell when taking out the trash on August 21, 2015. He also stated that his pain was decreasing and intermittent with medications. He reported decreased pain and symptoms following physical therapy. (Tr. 358) On September 1, 2015, Jones continued to complain of pain and spasm in his lumbar spine. He had significant limitations in all ranges of motion of the lumbar spine. (Tr. 360) However, Jones reported more equal step length and improved postural awareness. (Tr. 361) Jones did not attend his final three physical therapy appointments. (Tr. 360)

Jones saw psychiatrist, Dr. Vrabel, on September 15, 2015. He was still depressed and was afraid to go out. Dr. Vrabel diagnosed major depressive disorder with psychosis and noted that Jones continued to have significant mood and psychotic problems. He increased Seroquel to 100 mg. (Tr. 448)

Jones went to the emergency department at the Cleveland Clinic on January 15, 2016. He had fallen down his steps and injured his lower back and head. He reported moderate back pain and loss of consciousness. Bruising was noted on his forehead. (Tr. 365) Physical examination showed normal range of motion, normal strength, and no tenderness in his neck and back. (Tr. 369-370) A CT scan of his cervical spine showed severe acquired C5-6 and C6-7 narrowing with endplate remodeling cystic changes, including gas-containing cysts, endplate spurring and paravertebral ossifications. There was also distal cervical uncovertebral arthrosis with osteophytes and limited apophyseal joint arthrosis. (Tr. 377) An x-ray of Jones's lumbar spine showed degenerative disc space narrowing at the L3-4 and L4-5 levels with anterior and posterior vertebral body spurring. (Tr. 378) Jones was diagnosed with a head injury, acute back

pain and osteoarthritis of the spine with radiculopathy, cervical region. At discharge, the doctor noted no numbness; Jones was able to dress himself and sit, stand, and walk without any difficulty or assistance. Jones was instructed to follow-up with orthopedics. (Tr. 371)

Jones followed up with Dr. Brown on January 19, 2016. Jones reported weakness and soreness since his fall. (Tr. 394) Dr. Brown found weakness in Jones's upper extremities and limited range of motion in the cervical spine. (Tr. 395) Dr. Brown added ibuprofen and Flexeril to Jones's medications. (Tr. 395)

### C.    Opinion Evidence

### 1.    Consultative Exam – Hasan Assaf, M.D. – January 2015

Hasan Assaf, M.D., evaluated Jones on January 26, 2015. (Tr. 324-333) Jones reported a history of two car accidents in 1985 and 2008 that caused back problems and headaches. He also reported a knife cut to his upper left arm in 2001 that caused pain and numbness in his left hand, which was worse with lifting and reaching. Jones also reported pain in both wrists extending to his thumbs, which began five to six years earlier. Jones had not seen a doctor since 2008. He took Aleve and/or Tylenol for pain. (Tr. 324-325)

Jones told Dr. Brown he lived with his mother and cooked and cleaned twice a week. He did laundry and shopped once a week. He took daily showers or baths and dressed himself. (Tr. 325)

Examination showed that Jones was able to walk on his toes but declined walking on his heels due to pain. (Tr. 326) Dr. Assaf observed a positive straight leg test on the left at 30 degrees and on the right at 50 degrees. Jones had tenderness over both wrists and thumbs, left shoulder and left upper arm. (Tr. 327) Muscle testing revealed weakness in Jones's upper extremities and in his left lower extremity. Dr. Assaf also noted a weak left hand grasp. (Tr. 329) Jones had decreased range of motion in his cervical spine, left shoulder, right and left

wrists and dorsal lumbar spine.  (Tr. 330-331)  Jones had no muscle atrophy or spasms.  (Tr. 330)  An x-ray revealed degenerative changes in the lumbar spine with disc space narrowing and marginal osteophytic changes.  (Tr. 333)  Dr. Assaf diagnosed low back pain, probably lumbar disc disease; left upper arm pain, status post remote soft tissue injury; and bilateral wrist and thumb pain, probably DeQuervain tenosynovitis.  (Tr. 327)  Dr. Assaf opined that Jones would have marked limitation in activities requiring prolonged standing, walking, bending and lifting; and moderate limitations in activities requiring holding with his hands.  (Tr. 328)

### 2. State Agency Reviewing Physicians

Michael Delphia, M.D., reviewed Dr. Assaf's report on February 3, 2015.  Dr. Delphia opined that Jones was capable of lifting 20 pounds occasionally and 10 pounds frequently; that he could sit, stand and/or walk for 6 hours in an 8 hour work day; could never climb ladders, ropes or scaffolds; could occasionally crouch and crawl; could frequently climb ramps and stairs, stoop, handle and finger.  (Tr. 96)  Dr. Delphia opined that Jones must avoid all exposure to hazards.  (Tr. 97)  Dr. Delphia felt that Dr. Assaf's opinion was an overestimate of the severity of Jones's restrictions and/or limitations.  (Tr. 98)  Dr. Delphia opined the maximum sustained work Jones could do would be at the light exertional level.  (Tr. 99)

On April 9, 2015, Diane Manos, M.D., reviewed Jones's records and affirmed Dr. Delphia's findings.  (Tr. 119-121)  Dr. Manos noted that Jones's activities of daily living including his ability to cook and clean implied that he would not have marked limitations in standing, walking and/or using his arms and hands.  (Tr. 119)  Dr. Manos, like Dr. Delphia, opined the maximum sustained work Jones could do would be at the light exertional level.  (Tr. 123)

### D.    Relevant Testimonial Evidence

Jones testified at the hearing.  (Tr. 52-72)  Throughout his life, Jones had worked as a cook.  (Tr. 52-55)  He felt that years of working as a cook had taken a toll on his body.  He had not looked for other work because he did not like to do anything other than cook.  (Tr. 63)

Jones lived with his mother and did not do any chores.  (Tr. 71)  He spent most of the day lying in a recliner watching TV.  (Tr. 67)  He rarely went up and down stairs.  (Tr. 72)  In the morning when he woke up, he used an assistive device due to difficulty with balance.  He felt that his balance problems were due to bedtime medication side effects that persisted the next morning.  (Tr. 66)

Jones had pain in his low back with shooting pain down his left leg.  He also experienced numbness in his leg.  (Tr. 65)  Jones estimated that he could be on his feet for a half hour at a time before he needed to take a break.  Over the course of a day, he felt that he could be on his feet for a total of one and a half hours.  (Tr. 66)  Jones tried physical therapy which helped for a couple of hours but later worsened his pain.  (Tr. 68)

Jones also had pain in both hands, more severe in the left, non-dominant hand.  The pain in his knuckles made it difficult to hold things.  After holding things for ten seconds, his hands went numb.  Jones felt that he was limited to lifting no more than five pounds.  (Tr. 65)

Jones also treated for depression.  When he didn't take his medication he heard "things." Jones had "bad mood swings" and "outbursts," and he had difficulty getting along with people. (Tr. 70)  He had difficulty concentrating and his attention span was very short.  Jones stopped drinking alcohol five months before the hearing.  He did not use any illegal drugs or abuse his prescription medications.  (Tr. 71)

Gail Kleir, a vocational expert, also testified at the hearing.  (Tr. 73-75)  The ALJ first questioned the VE about an individual with Jones's work experience who was limited to light

exertion but could not climb ladders, ropes or scaffolds; could frequently climb ramps and stairs and stoop; could occasionally crouch, kneel and crawl; could frequently handle and finger with both hands; and must avoid all exposure to operating dangerous equipment and unprotected heights. (Tr. 73) The VE opined that this individual could not perform Jones's past work but could perform the jobs of order caller, cashier 2 and parking lot attendant. (Tr. 73-74)

When the exertional level of this individual was changed to medium, the VE opined that the individual could perform Jones's past work as a cook. The individual would still be able to perform the past work of cook if he was limited to occasional interaction with the general public. (Tr. 74) The VE testified that there would be no work for an individual who would be off task 15% of the time; 10% was the acceptable range of off-task behavior. The VE did not feel that Jones's acquired skills would transfer to sedentary work. (Tr. 75)

## IV.    The ALJ's Decision

The ALJ's June 1, 2016 decision contained the following findings relevant to this appeal:

3. Jones had the following severe impairments: degenerative disc disease, burn to the left hand, injury to the left arm and depression. (Tr. 21)

5. Jones had the residual functional capacity to perform medium work except he could not climb ladders, ropes or scaffolds; could frequently climb ramps and stairs, stoop; and could occasionally kneel, crouch and crawl. He was limited to frequent handling and fingering. He needed to avoid all exposure to operating dangerous equipment such as power saws, jackhammers, and working in unprotected heights. He was also limited to occasional interaction with the general public. (Tr. 24)

6. Jones was capable of performing past relevant work as a cook. (Tr. 33)

Based on all of her findings, the ALJ determined that Jones had not been under a disability from December 23, 2014 through the date of the decision. (Tr. 33)

## V.      Law & Analysis

### A.      Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner may not be reversed just because the record contains substantial evidence to support a different conclusion.  *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).  This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court.  *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

The court also must determine whether the ALJ decided the case using the correct legal standards.  If not, reversal is required unless the legal error was harmless. *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d

742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant will understand the ALJ's reasoning.

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 643

(6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.  A plaintiff bears the ultimate burden to prove

by sufficient evidence that he is entitled to disability benefits.  20 C.F.R. §404.1512(a).

### B.       Residual Functional Capacity

Jones argues that the ALJ erred in assessing his residual functional capacity ("RFC").

Jones contends that the ALJ did not properly evaluate his pain and asserts that there was no

evidence supporting her finding that Jones was capable of performing a range of medium work

activity.  ECF Doc. 14, Page ID# 549-551.

An ALJ's RFC determination is proper when it is based upon "all of the relevant medical

and other evidence."  20 C.F.R. § 416.945 (a)(3).  At its most basic level, a claimant's RFC is

simply an indication of his work-related abilities despite his limitations.  *See* 20 C.F.R. §

404.1545(a)(1).  The RFC is not a medical opinion, but an administrative determination reserved

to the Commissioner.  *See* 20 C.F.R. § 404.1527(e)(2).  Accordingly, the ALJ bears the

responsibility for determining a claimant's RFC based on all of the relevant evidence.  *See* 20

C.F.R. § 404.1545(a)(3).

Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by

substantial evidence.  Here, the ALJ determined that Jones was capable of performing work at

the medium exertional level.  (Tr. 24)  Medium work "involves lifting no more than 50 pounds at

a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do

medium work, the Commissioner determines that he can also do sedentary and light work.  20

C.F.R. § 404.1567(c).

As noted above, the Commissioner's findings cannot be reversed merely because there

exists in the record substantial evidence to support a different conclusion.  *See Mullen v. Brown*,

800 F.2d 535, 545 (6th Cir. 1999); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  The

question in this case is not whether there is evidence to support two different conclusions;

instead, the question is whether there is evidence to support the ALJ's medium work RFC finding.

None of the physicians who treated, examined, or reviewed Jones's records opined that he could perform work at the medium exertional level. The State agency reviewing physicians determined that light work was the maximum work Jones was capable of performing. (Tr. 31) This fact is significant because the VE testified that an individual limited to work at the light exertional level would not be able to perform Jones's past work. (Tr. 73) Nonetheless, the ALJ determined that Jones was capable of performing his past work at the medium exertional level. Jones argues that this decision lacked the support of substantial evidence. Jones's briefing on this issue is not a model of a well-developed argument, but it is adequately stated to put the issue of whether the ALJ supported her RFC by substantial evidence before the court.

The ALJ stated that Jones's treating physicians and therapists "all rely upon the claimant's statements of medical history, symptoms and complaints." (Tr. 26) However, in discussing the evidence, the ALJ actually cited objective examination findings. For example, she noted Dr. Brown observed a limping gait, weakness in the flexion of his left great toe, tenderness in the lumbar spine region and a positive straight leg raise test on the left only. At physical therapy, examination showed reduced range of motion in the lumbar spine and 4/5 strength in the lower extremities. (Tr. 27) A CT scan in January 2016 showed "severe acquired C5-6 and C6-7 interspace narrowing with endplate remodeling, cystic changes..." A lumbar spine x-ray also showed degenerative disc space narrowing at L3-4 and L4-5 spurring. (Tr. 28) Rather than acknowledging that these objective findings supported Jones's claims of pain, the ALJ pointed to other findings (such as the fact that the CT scan and lumbar x-ray showed no fractures). Unfortunately, she never explained how a finding of no fracture somehow negated the other objective findings.

The ALJ seemed to ignore parts of the record containing objective findings supporting Jones's complaints of pain and focused instead on perceived inconsistencies in his testimony to discredit his complaints of pain. (Tr. 27, 31) In support of her credibility assessment, the ALJ cited records regarding a fall for which Jones sought treatment in January 2016. The ALJ discredited Jones's testimony because she felt that he implied that he fell because his leg gave out. The records show that Jones tripped over his dog while carrying trash. (Tr. 31) The ALJ made much of this perceived inconsistency. But a close review of the hearing transcript and treatment notes shows no real inconsistency. It appears that Jones's attorney confused the cause of Jones's fall. (Tr. 49) But Jones never testified that he fell because his leg "gave out." He *did* testify that he *feared* his leg would "go out," but he did not attribute his January 2016 fall to this. (Tr. 72) And the ALJ (who discredited Jones's testimony on this perceived inconsistency) did not ask Jones to clarify the cause of his fall. At the hospital, Jones stated that he tripped over his dog while taking out the trash. (Tr. 367) Dr. Brown's less than specific notes state only that Jones "fell down a flight of stairs." (Tr. 394) Dr. Brown's notes do not state the cause of the fall, but there is no obvious inconsistency between the notes from medical providers and Jones's testimony.

The ALJ also discredited Jones's testimony because she determined that taking out the trash (which he was doing when he fell) meant that he was capable of carrying more than five pounds. (Tr. 31) Jones estimated his maximum ability to lift to a five-pound bag of potatoes – something familiar to a former cook. (Tr. 65) The ALJ did not ask Jones to quantify the weight of his trash. She simply inferred it was more than five pounds. Jones consistently reported that he was able to lift only five pounds. (Tr. 339, 65) It is questionable whether this was an actual inconsistency in the record or whether the ALJ unfairly discredited Jones's testimony on this basis.

To support her decision to reject the medical opinions and Jones's statements regarding the severity of his pain, the ALJ found that Jones's therapist and treating physicians relied on his subjective reports and that his statements were unreliable. She also rejected the opinions of Dr. Assaf and portions of the opinions of the state agency reviewing physicians. However, the medical records contained objective findings such as abnormal gait (Tr. 417), limited range of motion (Tr. 340, 360, 395), positive straight leg raise tests (404, 417) and objective findings on x-rays and CT scans (Tr. 377-378) And there is little support for the perceived inconsistencies by which the ALJ discredited Jones's statements. The court is aware that residual functional capacity is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(2). However, the ALJ bears the responsibility for determining a claimant's residual functional capacity based on *all* of the relevant evidence. Here, the ALJ seemed to have ignored evidence supporting Jones's disability claim and assigned great weight to small inconsistencies she attributed to Jones.

No medical source has opined Jones has the ability to do work at the medium exertional level. To the contrary, the only sources who opined directly on the issue – state agency doctors Delphia and Manos – both indicated the maximum work Jones could do was at the light exertional level with postural limitations. *See* discussion *supra* p. 7. Numerous cases have remanded ALJ decisions based on RFC findings that a claimant could do medium exertional level work when medical sources opinions supported only light work. *See, e.g. Thompson v. Astrue*, No. 09-6124-AA, 2010 U.S. Dist. LEXIS 84226, at *6 (D. Or. August 11, 2010); *Yu v. Comm'r Soc. Sec.*, No. ELH-13-1507, 2014 U.S. Dist. LEXIS 38328, at * 6-7 (D. Md. March 14, 2014); *Sample v. Comm'r SSA*, No. SAG-16-3758, 2017 U.S. Dist. LEXIS 161158 (D. Md. September 29, 2017)( "An ALJ need not adopt any particular medical opinion in formulating an RFC assessment. However, in a case like this where every medical source opinion (both treating

and non-treating) opined that there would be restrictions more significant than those found by the ALJ, additional explanation is required to justify the apparent deviation from the view of the medical professionals.")

Here, the ALJ provided scant reasoning to support her conclusion that Jones would be able to do medium work with postural limitations.  Regarding her decision to give "partial weight" to the state agency reviewing physicians, the ALJ stated:

> [S]ubsequent evidence indicates x-rays of cervical spine and lumbar spine show degenerative changes but no canal stenosis, nerve root impingement, etc., to support light exertion.  Moreover, physical therapy never recorded the condition as more than "back ache."  Additionally, his symptoms have never risen to the point where a physician has recommended MRI for further evaluation.  Finally, the record of the emergency room doctor in January 2016 notes he had no numbness and was able to sit, stand, and walk without any difficulty or assistance as well as having no issues getting undressed or dressed.'  (Ex. 4F/38).  As a result, evidence shows the claimant can perform a medium level of work.

(Tr. 31).  Missing from this analysis is any discussion of Jones's ability to lift things.  The only cited record evidence stands for the proposition that Jones could sit, stand, walk and dress himself during an ER encounter.  Left unexplained by the ALJ is how these notations bear upon a person's ability to lift fifty pounds occasionally and twenty five pounds frequently and to stand or sit six of eight hours in a work day.  The ALJ did not support her conclusion that there should have been evidence of canal stenosis or nerve root impingement, or the ordering of MRI studies in order to justify a light work rating by any citation to a medical opinion, a Social Security guidance document or anything else.  As such, the court must conclude the ALJ improperly took on the role of physician in making her RFC finding.  This was legal error.

The ALJ's determination that Jones was capable of performing his past work at the medium exertional level was not supported by substantial evidence.  Nor did she build an accurate and logical bridge between her decision and the evidence.  Her decision must be remanded.

### C. ALJ's Assessment of Opinion of Consulting Examiner, Dr. Hasan Assaf

One of Jones's specific grounds for contending that the ALJ erred in her RFC finding is that she improperly evaluated the opinion of the consultative physician, Hasan Assaf, M.D. Dr. Assaf opined that Jones had marked limitations in activities requiring prolonged standing, walking, bending and lifting; and moderate limitations in activities requiring holding with the right and left hands. The ALJ assigned little weight to this opinion because she found that Dr. Assaf's conclusions were vague and imprecise. (Tr. 30)

The administrative regulations implementing the Social Security Act impose standards on the weighing of medical source evidence. *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011). In determining disability, an ALJ evaluates the opinions of medical sources in accordance with the nature of the work performed by the source. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). The Code of Federal Regulations describes how medical opinions must be weighed:

> (c) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well

as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c).  See also 20 CFR § 404.1527(c).

In considering Dr. Assaf's opinion, the ALJ stated:

Based on this exam and the claimant's subjective complaints, Dr. Assaf opined marked limitations in activities requiring prolonged standing, walking, bending and lifting, and moderate limitations in activities requiring holding with the hands.  (Ex. 3F/10)  Little weight is given to his conclusions as they are vague and imprecise.  He did not define marked, nor did he define prolonged.  He did not define moderate limitations in activities requiring holding with the hands.  He did not use a dynamometer for measuring strength.  (Ex. 3F/6).  According to the testing, the right hand was entirely normal and the left was abnormal only in grasping.  Additionally, the claimant said he could do laundry, shop, and cook, etc., which is inconsistent with the doctor's limitations in the use of his hands.

Dr. Assaf's conclusions are also not supported by other medical records.  For example, the claimant has only minimal degenerative disc disease in the lumbar spine, according to x-rays taken in January 2016.  (Ex. 4F/45)  Dr. Assaf wrote "degenerative change of lumbar spine," but no other details.  There are no MRI's which is further evidence his symptoms have not raised the concern of physicians to require MRI evaluation.  Dr. Assaf's opinion simply relied on the accuracy of the claimant's medical history report when formulating his conclusions and there is a disparity between the claimant statements and the record.  The claimant also is inconsistent in reporting his symptoms, which lessens the reliability of these subjective statements.  For example, the claimant told Dr. Assaf he does the laundry, shops, cooks and cleans, but claimant told physical therapy he could not lift anything over 5 pounds.  (Ex. 4F/6).  As a result the doctor's opinion is inconsistent with its own examination findings, and the objective evidence and simply relies on self-reports of the claimant which are inconsistent with other evidence in the record and are unreliable.

(Tr. 30-31)

Dr. Assaf provided the only opinion of an examining physician and he did so at the request of the Division of Disability Determinations. (Tr. 324) He used terms common in disability determinations such as "marked" and "moderate." (Tr. 328) Rather than pointing out that his decision was inconsistent with other record evidence, the ALJ pointed to evidence that did not exist. For example, she criticized his opinion because he didn't use a dynamometer to test strength and because no physician had ordered an MRI. (Tr. 31)

She criticized Dr. Assaf for considering Jones's statements and pointed out another perceived inconsistency – Jones's statements to Dr. Assaf that he did laundry, shopped, cooked and cleaned. She found these statements to be inconsistent with Jones's statement that he could lift only five pounds. (Tr. 31) But this perceived inconsistency is based (again) on the ALJ's own assumption that laundry, shopping, cooking and cleaning required lifting more than five pounds. And even if Jones's statements to Dr. Assaf were inconsistent with his lifting limitation of five pounds – his stated abilities to shop, cook and clean would lead Dr. Assaf to opine that Jones's limitations were *less* marked – not more.

Dr. Assaf opined that Jones had marked limitations in activities requiring *prolonged* standing, walking, bending and lifting. Jones told Dr. Assaf that he cooked twice a week and cleaned twice a week. He did laundry once a week and went shopping once a week. (Tr. 325) There is nothing in Dr. Assaf's report stating that Jones performed these activities for prolonged periods. So, the ALJ's finding that Dr. Assaf's opinion was inconsistent with Jones's daily activities is nothing more than an assumption. Her finding was not based on substantial evidence. In rejecting Dr. Assaf's opinion, the ALJ failed to build an accurate and logical bridge between the evidence and her decision. Her decision must be remanded.

**D.      Whether the ALJ Properly Analyzed Jones's Pain**

Finally, Jones argues that the ALJ did not properly assess his complaints of pain.  ECF

Doc. 14, Page ID# 552.  When a claimant presents pain as a cause of disability, the Sixth

Circuit's decision in *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir.

1986) states the proper analytical framework:

> There must be evidence of an underlying medical condition and (1) there must be
> objective medical evidence to confirm the severity of the alleged pain arising
> from that condition or (2) the objectively determined medical condition must be
> of a severity which can reasonably be expected to give rise to the alleged pain.

*See also, Brown v. Bowen,* 836 F.2d 549, 1987 U.S. App. LEXIS 16897 at *14-15 (6th Cir.

1987).

Objective medical evidence of pain includes evidence of reduced joint motion, muscle

spasm, sensory deficit, or motor disruption.  The determination of whether the condition is so

severe that the alleged pain is reasonably expected to occur hinges on the assessment of the

condition by medical professionals.  Both alternative tests focus on the claimant's "alleged pain."

Although the cases are not always clear on this point, the standard requires the ALJ to assume

arguendo pain of the severity alleged by the claimant and then determine whether objective

medical evidence confirms that severity or whether the medical condition is so bad that such

severity can reasonably be expected.  *Wines v. Comm'r Soc. Sec.,* 268 F. Supp.2d 954, 957 (N.D.

Ohio 2003).

When there is no objective medical evidence sufficient to support a disability finding, the

claimant's statements about the severity of his symptoms must be considered along with other

relevant evidence in deciding whether a person is disabled:

> Because symptoms, such as pain, sometimes suggest a greater severity of
> impairment than can be shown by objective medical evidence alone, the
> adjudicator must carefully consider the individual's statements about symptoms
> with the rest of the relevant evidence in the case record in reaching a conclusion
> about the credibility of the individual's statements if a disability determination or

decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

Similarly, 20 C.F.R. 416.929(c)(3)(i)-(vi) also requires the claimant's statements concerning pain to be considered, even when there are no objective findings that would explain the pain:

We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements.

Here, the ALJ pointed to medical records inconsistent with Jones's report of the severity or extent of his symptoms. She stated:

Physical examination findings documented pertinent negatives: no myalgia, no joint swelling, no arthralgia, no gait disturbance and no neck pain or stiffness. (Ex. 4F/37). Physical exam findings showed a normal range of motion in the neck and back, and made no mention of tenderness in the back either, despite having fallen down stairs. (Ex. 4F/36-38). The claimant reported to the physical therapist he could not lift anything greater than 5 pounds, but this is not consistent with the other evidence he reported taking out the trash. It is a reasonable inference from this evidence the trash weighed more than 5 pounds. (Ex. 4F/24, 34)

The negative findings cited by the ALJ are all from one emergency room record on January 15, 2016. (Tr. 369-371) But the record as a whole *does* contain objective findings supporting Jones's complaints of pain. For example, when Jones saw Dr. Brown four days later, on January 19, 2016, Dr. Brown observed weakness in Jones's upper extremities and limited range of motion in the cervical spine. (Tr. 395) The ALJ was not required to discuss every piece of evidence in her decision. *Phillips v. Berryhill,* 2017 U.S. Dist. LEXIS 200685, 2017 WL 6045451, at *5 (W.D. Ky. Dec. 6, 2017) (quoting *Conner v. Comm'r of Soc. Sec.*, 658 Fed.

Appx. 248, 254 (6th Cir. 2016)); see also *Smith v. Comm'r of Soc. Sec.,* 2015 U.S. Dist. LEXIS 158250, 2015 WL 7460080, at *3 (W.D. Mich. Nov. 24, 2015). However, by discussing evidence from only one record and failing to acknowledge the objective evidence in the record supporting Jones's pain complaints, the ALJ failed to build an accurate and logical bridge between her decision and the evidence.

The ALJ then challenged Jones's credibility and discounted his complaints of pain because she determined that he was not credible. She referred to his statement that he could only lift five pounds which she found to be inconsistent with carrying out the trash. Jones argues that the ALJ impermissibly considered Jones's credibility in relation to his complaints of pain. The court disagrees and recognizes that credibility assessments are often involved in considering complaints of pain. And, the ALJ's credibility findings are entitled to deference because she had the opportunity to observe Jones and assess his subjective complaints. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001). However, the ALJ cannot decide credibility based solely upon an "intangible or intuitive notion about an individual's credibility." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at * 4. Rather, such determinations must find support in the record. When a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record."

The regulations set forth factors that the ALJ must consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain. 20 C.F.R. § 416.929(c)(3)(i)-(vi). If the ALJ rejects the claimant's complaints as not fully credible, she must clearly state her reasons for doing so.

The ALJ had several reasons for questioning Jones's credibility.  Even Jones concedes the existence of at least one inconsistency related to his credibility.  He acknowledges that he falsely denied any criminal record to Frontline Services.  ECF Doc. 14, Page ID# 552. Nonetheless, the court agrees that much of the ALJ's credibility assessment was based on her own inferences regarding Jones's statements.  For example, she repeatedly referred to Jones carrying out the trash and assumed that it weighed more than five pounds.  Thus, although the court would not reverse the ALJ's decision based on her credibility assessment alone, upon remand the ALJ should reconsider Jones's credibility in light of the entire record.

## VI.    Conclusion

Because the ALJ did not correctly apply the applicable legal standards and because the ALJ's reasoning did not build an accurate and logical bridge between the evidence and the results of her decision, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: June 19, 2018

Thomas M. Parker
United States Magistrate Judge